J-A24020-15

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| NICHOLL JACKSON, AN INCAPACITATED PERSON BY HER COURT APPOINTED CO-GUARDIANS, ARLENE HINKLE AND THERESA CAINES | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | : | |
| v. | : | |
| ALLEGHENY VALLEY SCHOOL, | : | |
| Appellee | : | No. 3042 EDA 2014 |

Appeal from the Order Entered September 25, 2014
in the Court of Common Pleas of Philadelphia County,
Civil Division at No.: April Term, 2013 No. 5171

BEFORE:    PANELLA, WECHT, and STRASSBURGER,* JJ.

DISSENTING MEMORANDUM BY STRASSBURGER, J.:

**Filed:  December 18, 2015**

Because I believe that Appellants came forth with sufficient evidence to survive summary judgment, I respectfully dissent.

In their March 22, 2011 behavioral management program for Jackson, the specific behavior AVS sought to target was Jackson's self-injurious behavior.   Motion for Summary Judgment, 8/4/2014, at Exhibit I, page 1. The program also noted Jackson's pica and elopement behaviors.  ***Id.***  Thus, Jennifer Szopo, the Executive Director of AVS, testified that AVS's behavioral management program for Jackson was to have her "closely supervised during waking hours 7 days a week[.]"  N.T., 6/24/2014, at 29.  This close

_____

* Retired Senior Judge assigned to the Superior Court.

supervision included "keeping [Jackson] within staff's sight and sound at all times. [Jackson] should be no more than [a] 5 foot radius from staff so that she can be reached in time." *Id.* at 29-30.

The record before the trial court also contained the statements given to police by AVS employees Evangeline Gbargaye, who had assisted Jackson with her shower on the night of May 7, 2011, and Ellen Sloh, who had dressed Jackson on May 8, 2011 at 6:30 am per her usual routine. Ms. Gbargaye indicated that the only injury she observed on Jackson was an old scratch between her breasts. Motion for Summary Judgment, 8/4/2014, at Exhibit EE, page 2. Ms. Sloh similarly saw some faded scratches on Jackson's chest, but no other marks on her body. *Id.* at Exhibit FF, page 2.

Appellants visited Jackson at AVS at approximately 2:30 pm on May 8, 2011, a 75-degree Mother's Day. They had brought sandwiches and intended to have a picnic outdoors with Jackson. Exhibit B to Answer to Motion for Summary Judgment, 9/4/2014, at 46. Jackson was brought out in a heavy, long-sleeved shirt, fully buttoned, with her hair combed forward. *Id.* at 47. Upon lifting Jackson's hair from her cheek, Appellants discovered "all knuckle marks, black, yellow, bruised." *Id.* Removing Jackson's shirt, Appellants saw large bruises "like grab marks" on both of Jackson's upper-arms. *Id.* at 48. Underneath the tank top Jackson was wearing, Appellants found bruising "all over her breasts." *Id.*

Ms. Sloh confirmed, after viewing photographs of the injuries Appellants discovered, that she had not seen the injuries to Jackson's chest, or any of the other injures depicted in the photographs, when she had dressed Jackson that morning. Motion for Summary Judgment, 8/4/2014, at Exhibit FF, page 2.

Viewing this evidence in the light most favorable to Appellants, Jackson sustained her injuries sometime between when Ms. Sloh helped Jackson dress at 6:30 am and when Appellants arrived at approximately 2:30 pm. During these hours, AVS's acknowledged standard of care was to have someone supervising Jackson within five feet at all times. Yet, within this time, in AVS's care, Jackson sustained serious blunt-force injuries to her face, breasts, and arms.

I would hold that Appellant's failure to pinpoint the specific way Jackson suffered harm is not fatal to the claims. Indeed, the very fact that AVS does not know how Jackson was injured during the timeframe at issue proves that AVS was negligent: if AVS had provided the constant close supervision it determined was necessary to protect Jackson, someone at AVS would have observed the harm being inflicted upon Jackson, be it by Jackson or someone else.

Thus, a jury could conclude that AVS did not act reasonably under the circumstances in allowing Jackson or someone else the opportunity to inflict

the serious injuries Jackson sustained, and that AVS's breach of that duty of care is what caused Jackson's injuries. Accordingly, I would reverse the order which granted summary judgment to AVS.